UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

EDWIN CORREA,
                Petitioner,

v.                                     Case No. 2:14-CV-12592
                                     HON. R. ALLAN EDGAR

DUNCAN MACLAREN,
                Respondent.
_____/

## OPINION AND ORDER

Petitioner filed this § 2254 petition for writ of habeas corpus challenging the validity of his state court conviction based on violations of his Fifth, Sixth, and Fourteenth Amendment rights. On November 25, 2008, Petitioner was convicted by a jury of first degree criminal sexual conduct (MICH. COMP. LAWS § 750.520(b)(1)(B)). Petitioner was then sentenced, as a second habitual offender, to a prison term of twenty-five to fifty years.  Petitioner remains in the custody of the Michigan Department of Corrections.

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals.  ECF No. 14-3 at 21-52, 97-115. The Court of Appeals denied his application and affirmed his convictions on May 18, 2010.  *See People v. Correa*, No. 290271, 2010 WL 1979297, at *1 (Mich. Ct. App. May 18, 2010); *see also* ECF No. 14-13 at 1-16. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court.  ECF No. 14-14 at 3-50. The Michigan Supreme Court denied Petitioner's application on December 16, 2010. *People v. Correa*, 791 N.W.2d 285 (Mich. 2010); *see also* ECF No. 14-14 at 1.  On December 15, 2011, Petitioner returned to the trial court and filed a motion for relief from judgment, which was denied on September 12, 2012.  ECF No. 14-8 at 1-43; ECF No. 14-9 at 1-

5. Petitioner then filed an application for leave to appeal to the Michigan Court of appeals, which was also denied on October 2, 2013. ECF No. 14-15 at 3-61; ECF No. 14-15 at 1-2. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, and this application was denied on March 28, 2014. *People v. Correa*, 843 N.W.2d 767 (Mich. 2014); *see also* ECF No. 14-16 at 1-29.

Petitioner maintains that his convictions were based on violations of his Fifth, Sixth, and Fourteenth Amendment rights. Petitioner sets forth the following claims for relief.

I. E.C.'s Constitutional Sixth Amendment right to confront the witnesses against him was encroached upon when the State of Michigan benefit[t]ed from:

A. [A] testimonial hearsay report generated by a non-testifying witness, i.e., the accusant's attendant doctor. The doctor generated the report that declared that he was "positive" that E.C. sexually assaulted his accuser. The doctor did not testify at trial and the State of Michigan entered the report into evidence as absolute proof of guilt.

B. [T]he accusant's testimonial hearsay statements allegedly briefed to her mother. The statements were entered into evidence although the declarer of those statements was not unavailable nor did E.C. have a prior opportunity to cross-examine the declarer concerning the statements.

C. [T]he accusant's testimonial hearsay statements allegedly briefed to her attendant nurse. Again the statements were not entered into evidence even though the declarer was not unavailable nor did E.C. have a prior opportunity to cross-examine the declarer concerning those statements.

D. [T]he accusant's testimonial hearsay statements allegedly briefed to her attendant police officer. Likewise, the statements were entered into evidence even though the declarer was not unavailable nor did E.C. have a prior opportunity to cross-examine the declarer concerning those statements.

II. E.C.'s Constitutional Sixth Amendment right to not be a witness against himself was encroached upon when the State of Michigan benefit[t]ed from:

> A. [E]xtensive commenting on E.C.'s failure to testify. At closing arguments, the State of Michigan argued that unanswered "questions" and uncontradicted evidence proved E.C.'s guilt.
>
> B. [C]omments on E.C.'s failure to explain his version of the facts to a police officer. At closing arguments, the State of Michigan argued that E.C. did not explain his side of the story to police and he is guilty because of it.

III. E.C.'s Constitutional Sixth Amendment right to effective assistance of counsel was encroached upon when the State of Michigan benefit[t]ed from trial counsel's:

> A. [F]ailure to adequately cross-examine the accusant's memory of the alleged events as the accusant's memory of the event was lacking in credibility and she made inconsistent statements in and out of court.
>
> B. [F]ailure to investigate and consult an expert witness to offer an opinion regarding memory and its weight on a person's ability to accurately recall events. Counsel neglected to support his theory of the case.
>
> C. [F]ailure to timely investigate and utilize a carehouse report. The report contained evidence that the accusant and her mother evaded several appointments for forensic interviewing, and the report contained untrue assertions by the accusant's mother.
>
> D. [F]ailure to discover a 911 recording that contained statements by a key State witness. Because the State's case was based upon pure testimony and no other evidence existed to prove E.C.'s guilt, the recording potentially contained impeaching evidence against that key witness's credibility.[1]

---

[1]This issue was raised in Petitioner's amended habeas application. ECF No. 9 at 1.

3

IV. E.C.'s Constitutional Fifth and Fourteenth Amendment right[s] to a fair trial was [sic] encroached upon when the State of Michigan benefit[t]ed from:

> A. [A] nurse's vouching for the credibility of the accusant when she stated that the accusant's allegations were consistent with a performed medical examination.

> B. [A] jury's coerced verdict by the judge's remarks about the horrendous predicament the jury would confront if a verdict was not immediately reached that same day.

> C. [A] prosecutor's attack on the veracity of E.C.'s attorney by implying that he did not believe in his client. The prosecutor stated that E.C.'s attorney had to create reasonable doubt where non existed.

> D. [A] prosecutor's personal expression of opinion, an argument about facts not in evidence, an argument to the jury to place themselves in the accusant's shoes, and an argument placing the weight of her office behind the accusant.

V. E.C's Constitutional Fifth and Fourteenth Amendment right[s] to a fair trial was [sic] encroached upon when the State of Michigan benefit[t]ed from:

> A. [A] failure to provide E.C. with an exculpatory 911 recording. On information and belief, the 911 recording would have discredited the testimony of a material witness, Tanille Lafay Clark (the caller).

VI. E.C.'s twenty-five minimum sentence for first-degree criminal sexual conduct amounts to cruel and unusual punishment.

ECF No. 1 at 5-8. After Petitioner filed his § 2254 claim in this Court, he filed a motion to amend his original habeas petition (ECF No. 9), which was granted on March 20, 2015 (ECF No. 12). Petitioner failed to file any briefs in support of his habeas application. Respondent filed an Answer in Opposition to Petitioner's habeas application on May 1, 2015. ECF No. 13. Petitioner did not reply to Respondent's Answer. The matter is now ready for a decision.

4

I.

Petitioner filed this petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996.  Pub. L. 104-132, 110 Stat. 1214 (AEDPA); *Bell v. Cone*,

535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures

state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas

application by a person in state custody shall not be granted in regards to any claim that has

previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme

Court, not lower federal courts, in analyzing a petitioner's claim under § 2254.  *Williams v.

Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  A

decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme

Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme

Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the

case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5)

it unreasonably refuses to extend Supreme Court legal principle where it should apply.  *Bailey*,

271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

5

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court concludes that Petitioner has not provided clear and convincing evidence that the state court improperly applied clearly established federal law to the facts of Petitioner's case.

## II.

Petitioner argues that this Court should grant him relief based on violations of his Fifth, Sixth, and Fourteenth Amendment rights. This Court will review the merits of each claim.

### A. Confrontation Clause

Petitioner's first group of claims relate to his Sixth Amendment right to confront the witnesses against him. He claims that this right was violated on four separate occasions by the state of Michigan: (1) when a report generated by the victim's doctor was admitted, (2) when the victim's statement to her mother was admitted, (3) when the victim's statement to the nurse

6

was admitted, and (4) when the victim's statement to the police officer was admitted.  ECF No. 1 at 5-6.

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 406 (1965) (noting the Confrontation Clause includes the right to cross-examine those witnesses). Generally, this means that testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless the witnesses are unavailable and defendants had a prior opportunity to cross-examine the witnesses, regardless of whether such statements are deemed reliable by the court.  *Crawford v. Washington*, 541 U.S. 36 (2004) (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)).  Notably, however, this right is not absolute and it may be waived.  *Jordan v. Warden, Lebanon Correctional Inst.*, 675 F.3d 586, 594 (6th Cir. 2012) ("The Constitution guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)); *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("[T]his Court's definition of a waiver [is] 'an intentional relinquishment or abandonment of a known right or privilege.'") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In general, "[t]here is a presumption against the waiver of constitutional rights . . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart v. Janis*, 384 U.S. 1, 4 (1966) (quoting *Johnson*, 304 U.S. at 464). In order for a waiver to be valid, the record must

7

clearly show that the accused comprehends the nature of the waived right and agrees to its

waiver. *Faught v. Cowan*, 507 F.2d 273, 280 (6th Cir. 1974).

### i. Doctor's Report

Petitioner first claims that his Sixth Amendment right to confront the witnesses

against him was violated when "a testimonial hearsay report generated by a non-testifying

witness, i.e., the accusant's attendant doctor [was admitted]. The doctor generated the report that

declared that he was 'positive' that E.C. sexually assaulted his accuser. The doctor did not testify

at trial and the State of Michigan entered the report into evidence as absolute proof of guilt."

ECF No. 1 at 5-6.

This claim was initially raised in Petitioner's direct appeal to the Michigan Court

of Appeals. *See Correa*, 2010 WL 1979297, at *11. The Michigan Court of Appeals denied this

claim on procedural grounds, but also noted the following:

> In this case, defendant did not object to the admission of the medical
> records at trial even though they contained statements from Dr.
> Frankowiak. Rather, defendant affirmatively indicated that he had no
> objection to their admission. Moreover, defendant did not object
> when the trial proceeded without the testimony of Dr. Frankowiak. In
> fact, defense counsel expressly waived Dr. Frankowiak's testimony
> at trial, indicating that defendant had no objection to Dr.
> Frankowiak's failure to testify.

*See Correa*, 2010 WL 1979297, at *11.  This is corroborated by the record:

> Defense Attorney: Judge, regarding the issue of Dr. Frankowiak I will
> speak for myself. I would move at this time to waive his presence. I
> have subpoenaed him. I have discussed with my client. He has agreed
> with me and has no objection to him not appearing at the trial.
>
> Prosecutor: Your Honor, I also would not call him as a witness . . . .
>
> Court: So both sides are waiving any right to bring this doctor in to
> testify; is that right?

      Prosecutor: That is correct, your Honor.

      Defense Attorney: Correct.

ECF No. 14-6 at 150-51. Therefore, Petitioner, through his attorney, waived his right to confront Dr. Frankowiak by agreeing with his attorney that Dr. Frankowiak need not be called as a witness. *Barber*, 390 U.S. at 725 ("[T]his Court's definition of a waiver [is] 'an intentional relinquishment or abandonment of a known right or privilege.'") (quoting *Johnson*, 304 U.S. at 464). As a result, this claim fails.

**ii. Statements to the Mother, Nurse, and Police**

      Petitioner's final three Confrontation Clause claims allege that hearsay statements were improperly admitted by the victim's mother, nurse, and police officer. ECF No. 1 at 6; ECF No. 1 at 6; ECF No. 1 at 6.

      Petitioner initially raised these claims as evidentiary claims in his direct appeal to the Michigan Court of Appeals; however, he now frames these issues as Confrontation Clause claims. *See Correa*, 2010 WL 1979297, at **3-6, 11. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.

      Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they

9

offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003). "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

While Petitioner now raises these three claims as Sixth Amendment issues, they are clearly state law evidentiary issues. Because federal courts cannot intervene on the basis of perceived errors of state law, these claims are not cognizable on habeas review. *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

**B. Self-Incrimination**

Petitioner's next group of claims allege violations of his right not to be a witness against himself at trial, which he claims occurred when: (1) the prosecutor commented on Petitioner's failure to testify in the closing arguments, and (2) the prosecutor commented on Petitioner's failure to explain his version of the facts to a police officer. ECF No. 1 at 6-7.

While Petitioner has worded these claims as Fifth Amendment self-incrimination claims, they function substantively as prosecutorial misconduct claims. In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone

10

of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

In both of Petitioner's claims, he alleges that the prosecutor improperly referenced his decision not to testify or speak with police during closing arguments. *See* ECF No. 1 at 6-7. The Michigan Court of Appeals reviewed both of these issues individually. In regard to the prosecutor's statements about Petitioner's failure to testify, the Court of Appeals stated the following:

> Defendant argues on appeal that he was denied a fair trial as a result of statements made by the prosecutor during closing argument regarding defendant's failure to testify. We disagree. Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v. Brown*, 279 Mich. App. 116, 134; 755 NW2d 664 (2008). As this issue was not preserved in the trial court, however, this Court reviews the issue for plain error. *Id.* Under the plain error rule, a defendant must establish that 1) error occurred, 2) the error was plain (i.e., clear or obvious), and 3) the error affected substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Reversal is only warranted if the plain error resulted in the conviction of an actually innocent defendant or "seriously affected the fairness, integrity, or public reputation of judicial

11

proceedings' independent of defendant's innocence." *Id.* at 763-764 (internal quotations and citation omitted). See also *People v. Shafier*, 483 Mich. 205, 219-220; 768 NW2d 305 (2009).

Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v. Thomas*, 260 Mich. App. 450, 454; 678 NW2d 631 (2004). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Brown*, 279 Mich. App. at 135.

A prosecutor may not comment on a defendant's silence or his failure to testify. *People v. McGhee*, 268 Mich. App. 600, 634; 709 NW2d 595 (2005); *People v. Abraham*, 256 Mich. App. 265, 273; 662 NW2d 836 (2003). Moreover, a prosecutor may not remark regarding the failure in general of a defendant to present evidence. *Abraham*, 256 Mich. App. 457, 477; 592 NW2d 767 (1999), and comment on the failure of the defense to produce evidence on which it relies, *McGhee*, 268 Mich. App. at 634.

In this case, the prosecutor made two statements that defendant argues amounted to misconduct. In the first instance, she stated:

> The defendant's claiming I didn't do it, I didn't do it. What didn't he do? Did he ever question anybody about what are these allegations? He knows immediately I didn't do it? He touched my daughter? Did he ask anything else about that? What did I touch her with? Where? When? He knows exactly what mom's talking about because he was the one that did this.

> I think in this trial, some of the unanswered questions really do answer the question about whether this defendant is guilty beyond a reasonable doubt.

In the second instance, the prosecutor stated:

> Now what I meant by some of these unanswered questions really answer the question about the defendant's guilt, why would this defendant be up at four in the morning outside pacing back and forth? That's the only evidence you heard. There's nothing to the contrary about that.

12

Defendant argues that such statements amounted to burden-shifting, requiring defendant to provide evidence that he did not commit the crime rather than the burden being on the prosecution to prove the elements of the crime. Defendant also argues that the reference to "unanswered questions" is a comment on defendant's right to remain silent. Upon review of the record, it is clear that the prosecutor's arguments concerned defendant's manifestations of consciousness of guilt immediately after the incident, not whether the burden was on defendant to prove something or whether defendant should have testified. The prosecutor's implication that defendant appeared to know more about the alleged incident than his girlfriend's accusations revealed is misguided, as it is not supported by the testimony. That said, it is undisputed that after the victim told her mother what had just happened and stood crying in the bathroom, the mother went to confront defendant and found him outside the house, in the early morning hours, pacing in the driveway area. Subject to her unsupported implications regarding defendant's pre-existing knowledge, the prosecutor properly argued based on the evidence presented that defendant's actions after the incident erased any reasonable doubt that he committed the crime. The prosecutor did not explicitly comment on the burden being on defendant to present other evidence or on defendant's failure to testify.

Even if the prosecutor engaged in misconduct, her misconduct was remedied by the instructions from the trial court. A miscarriage of justice will not be found "if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v. Watson*, 245 Mich. App. 572, 586; 629 NW2d 411 (2001) (internal quotations and citation omitted). The trial court instructed the jury that the burden was on the prosecution to prove the elements of the crime and the jury should not consider in its deliberations the fact that defendant did not testify. The court also instructed the jury that it should only accept things the lawyers have said that are supported by the evidence. Therefore, we conclude that the trial court remedied any potential prejudice suffered by defendant through its jury instructions.

*Correa*, 2010 WL 1979297, at **1-2.  In reference to Petitioner's failure to explain his version of

the facts to a police officer, the Michigan Court of Appeals stated:

Defendant argues in his *in propria persona* brief that the prosecutor denied him his right against self-incrimination by commenting on defendant's failure to make a statement to the police. We disagree. Constitutional questions are reviewed de novo, but an unpreserved

13

constitutional error is reviewed under the plain error standard. *Shafier*, 483 Mich. at 211.

A defendant in a criminal case has a constitutional right under the Fifth Amendment of the United States Constitution against compelled self-incrimination and may choose to rely on the presumption of innocence. US Const, Am 5; *People v. Fields*, 450 Mich. 94, 108; 538 NW2d 356 (1995). "To effectuate this right, no reference or comment may be made regarding defendant's failure to testify." *Fields*, 450 Mich. at 108-109. In addition, "the right against self-incrimination prohibits a prosecutor from commenting upon the defendant's silence in the face of accusation, but he does not curtail the prosecutor's conduct when the silence occurred before any police contact." *People v. Goodin*, 257 Mich. App. 425, 432; 668 MW2d 392 (2003). See also *Shafier*, 483 Mich. at 217-218. Evidence of flight does not implicate a defendant's Fifth Amendment protection against self-incrimination and may be commented upon by the prosecutor. *Goodin*, 257 Mich. App. at 433. Moreover, the Fifth Amendment does not completely bar comment by the prosecutor on a defendant's failure to testify or make another statement, in that under certain circumstances he or she may fairly respond to an argument of the defendant by referring to that silence. *Fields*, 450 Mich. at 110-111.

In her rebuttal closing argument, the prosecutor stated in pertinent part:

> Her mother testified that when she got up, [defendant is] out of the bed. When she went to bed, [defendant is] there; when see [sic] gets up, he's gone. [The victim] said he was in the bed with her. [The victim] said that he was outside. [The mother] corroborates that. When she got up, she saw him outside. Officer Ludd said he tries to rouse him, get him from the house, knocking on the door, banging on the windows, you know, Pontiac police, you know, let me in or can I talk to you. If nothing happened, why wouldn't he go to the door? My God, wouldn't you try to explain to a police officer if somebody accused you of putting your finger in some child's genital opening, do you think that maybe he should have gotten up and answered the door? That's not corroboration?

When viewed in context, it is apparent that the statement was not an improper comment on defendant's invocation of the right to remain silent. Rather, it was a comment on defendant's odd behavior immediately following the incident used to demonstrate his

14

> consciousness of guilt. While the last portion of the prosecutor's
> remarks could potentially be viewed as inappropriate if taken out of
> context, even assuming they were improper we do not find that they
> affected defendant's substantial rights. See *Shafier*, 483 Mich. at 211.

*Correa*, 2010 WL 1979297, at **10-11. The Court of Appeals' decision is thorough and complete, and it does not improperly apply federal law to the facts of Petitioner's case. *Bailey*, 271 F.3d at 655.

Even if the prosecutor did violate Petitioner's Fifth or Sixth Amendment rights during closing arguments, the Sixth Circuit "has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. May 14, 2001); *O'Hare v. Woods*, No. 2:09-13893, 2012 WL 1079753, at *16 (E.D. Mich. Mar. 30, 2012) ("[T]he Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, . . . in a defendant's guilt, must be flagrant and not isolated."). In addition, any statements made by the prosecutor that would constitute improper vouching for Petitioner's guilt did not "rise to the level of a due process violation necessary for federal habeas relief[] because the sizeable amount of evidence offered by the state against petitioner made it unlikely the jury was misled by this brief statement." *O'Hare*, 2012 WL 1079753, at *16 (citing *Wilson*, 250 F.3d at 398). As a result, Petitioner's claims fail.

### C. Effective Assistance of Counsel

Petitioner's next group of claims allege that his trial counsel was ineffective when he: (1) failed to cross-examine the victim's memory with prior inconsistent statements, (2) failed to investigate and consult an expert on memory recall, (3) failed to investigate and use Care House reports, and (4) failed to obtain a 911 recording. ECF No. 1 at 7; ECF No. 9 at 1.

15

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See United States v. Foreman*, 323 F.3d 498, 504 (6th Cir. 2003).

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has repeatedly recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing

16

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13

(2013); *Cullen v. Pinholster*, 563 U.S. 170, 189-190 (2011); *Premo v. Moore*, 562 U.S. 115, 122

(2011).  In those circumstances, the question before the habeas court is "whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562

U.S. at 89; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme

Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the

context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).  Where a prisoner has

raised multiple claims of ineffective assistance of counsel and the state appellate courts have

neglected to address one of the claims, the habeas court's review on the performance prong is *de

novo*.  *See Daniel v. Curtin*, 499 Fed App'x 400, 404 (6th Cir. 2012).

### i. Victim Cross-Examination and Expert Witness

Petitioner's first two ineffective assistance of counsel claims were raised in his

motion for relief from judgment in the trial court: (1) failure to effectively cross-examine the

victim, and (2) failure to investigate and consult an expert witness on memory recall.  ECF No.

14-9.  On September 24, 2012, the trial court denied these claims:

> In addition, Defendant cannot show that his appellate counsel was
> ineffective or demonstrate actual prejudice because his claims of
> ineffective assistance of trial counsel are without merit. Defendant
> claims (1) that his trial counsel was ineffective for failing to properly
> cross-examine the victim regarding her memory of the incident; (2)
> that trial counsel failed to adequately prepare for trial and was
> ineffective for failing to investigate or to call an expert witness to
> offer and opinion regarding memory and its impact on a person's
> ability to recall events accurately; and (3) that appellate counsel was
> ineffective for failing to present the issues on appeal.
>
> A defendant that claims that he has been denied the effective
> assistance of counsel must establish that (1) the performance of his
> counsel was below an objective standard of reasonableness under

17

prevailing professional norms, and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. *People v. Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy. *Peopel v. Stanaway*, 4464 Mich. 643, 687; 521 NW2d 557 (1994).

"Decisions regarding what evidence to present, whether to call a witness, and how to question witnesses are presumed to be matters of trial strategy . . . ." *People v. Horn*, 279 Mich. App. 31, 39; 755 NW2d 212 (2008) (internal citations omitted). Similarly, decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich. App. 8, 23; 608 NW2d 132 (1999); *People v. McFadden*, 159 Mich. App. 796, 800; 407 NW2d 78 (1987). Defense counsel is afforded wide latitude on matters of trial strategy. *People v. Unger*, 278 Mich. App. 210, 242-243; 749 NW2d 272 (2008). To that end, the Court of Appeals abstains from substituting its judgment for that of defense counsel on such matters. *People v. Avant*, 235 Mich. App. 499, 508; 597 NW2d 864 (1999). In addition, simply because a particular trial strategy does not work does not constitute ineffective assistance. *People v. Matuszak*, 263 Mich. App. 42, 61; 687 NW2d 342 (2004).

Defendant has not overcome the strong presumption that trial counsel's cross-examination of the victim and counsel's decision not to call an expert witness was sound trial strategy. Accordingly, he has not shown that appellate counsel was ineffective for failing to present the issues on appeal. An appellate attorney is not required to raise every conceivable issue. *People v. Reed*, 198 Mich. App. 639, 646; 499 NW2d 441 (1993). The failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented. *Id.* Moreover, counsel is not required to advocate a meritless position. *People v. Snider*, 239 Mich. App. 393, 425; 608 NW2d 502 (2000).

ECF 14-9 at 3-5. The Michigan state court's analysis of these two ineffective assistance of counsel claims is thorough and complete, and it does not improperly apply federal law to the facts of Petitioner's case. *Bailey*, 271 F.3d at 655. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within

18

the 'wide range' of reasonable, professional assistance." *Smith v. Jenkins*, 609 Fed. App'x 285, 292 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 697). Petitioner has not satisfied his burden of showing that his attorney did not function as one guaranteed by the Sixth Amendment. *Id.* (citing *Strickland*, 466 U.S. at 698).

Moreover, upon review of the trial transcript, it is clear that defense counsel cross-examined the victim at length regarding her memory of this incident, and that counsel attempted to diminish the victim's credibility by pointing out inconsistencies in her statements. *See, e.g.,* ECF No. 14-6 at 43 ("Q: Do you remember telling us that it was dark in the room? A: No. Q: You don't remember that? Is your memory better now or is it better when, back when you testified in court on July 10th, if you know? A: I don't remember."); ECF No. 14-6 at 47 ("Q: And were the windows closed; do you know? A: It was open . . . . Q: Do you remember when you testified in Pontiac Court, Leona? A: Yes. Q: And did you remember when I asked you the question . . . was it open or closed . . . A: Yes. Q: Do you remember saying it was closed? . . . A: No."); ECF No. 14-6 at 53-55. Therefore, Petitioner has not overcome the presumption that his counsel's decisions were sound trial strategy. *Strickland*, 466 U.S. at 689 (noting that court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). As such, this Court denies Petitioner's first two ineffective assistance of counsel claims. *See Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123 (noting that when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential)).

### ii. Care House Reports

Petitioner's next claim is that his trial attorney failed to, "timely investigate and utilize a carehouse [sic] report. The report contained evidence that the accusant and her mother evaded several appointments for forensic interviewing, and the report contained untrue assertions by the accusant's mother." ECF No. 1 at 7. The prosecutor's witness, Investigator Terry Healy, testified at trial that Care House is:

> [A] child friendly place other than a police department where children can be brought in and interviewed and the purpose of that is to eliminate how many times or minimize the amount of times they are interviewed by various agencies. Present for the interviews would likely be obviously somebody from law enforcement. There would be someone from Child Protective Services occasionally, then there would be the actual forensic interviewer who conducts the interview and there might be a social worker there as well.

ECF No. 14-6 at 154.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *accord Clinkscale v.*

20

*Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000) (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991)).

While Petitioner claims that his trial attorney did not investigate or use the Care House reports in this case, it is clear from the trial transcript that this is not true. Defense counsel questioned three of the state's witnesses about the existence of any Care House reports. ECF No. 14-6 at 108-110, 145, 153-55. The witnesses indicated that no Care House report was done in this case. *Id.*; *see Durr v. Mitchell*, 487 F.3d 423, 438 (6th Cir. 2007) ("Counsel then cannot be faulted for failing to present evidence that apparently does not exist."). Petitioner's attorney then used the fact that a Care House report was not done in this case to show the jury that the victim was lying about her sexual assault. ECF No. 14-6 at 214-17. Therefore, Petitioner has not demonstrated that his attorney failed to investigate, or use, evidence relating to Care House reports. In fact, the record establishes the opposite is true. Consequently, Petitioner's attorney did not perform deficiently for failing to investigate and use Care House reports, and this ineffective assistance of counsel claim is denied.

### iii. 911 Recording

Next, Petitioner asserts that his attorney was ineffective for, "fail[ing] to discover a 911 recording that contained statements by a key State witness. Because the State's case was based upon pure testimony and no other evidence existed to prove E.C.'s guilt, the recording potentially contained impeaching evidence against that key witness's credibility." ECF No. 9 at 1.

At the outset, it is not clear that Petitioner informed his attorney about the 911 recording. This is significant because, "counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997) (citing *Randle v. Scott*, 43 F.3d 221, 225 (5th Cir.), *cert. denied*, 515 U.S. 1108 (1995)); *see also United States v. Roane*, 378 F.3d 382, 406 (4th Cir. 2004) (noting counsel was not ineffective when defendant did not inform attorney of certain evidence).

Moreover, even if Petitioner's trial attorney had known about the 911 recording, he was not ineffective since Petitioner has not shown that this recording would have changed the outcome of his case. *Strickland*, 466 U.S. at 691 (noting even if an attorney performed deficiently, he is not ineffective if his deficient performance did not affect the judgment of the case). The little information the Court has in regard to this recording is that it was a call between the 911 dispatcher and the victim's mother on the night of the sexual assault. This, alone, would not be sufficient evidence to clearly show that the outcome of Petitioner's case would have been different but for his attorney's failure to discover and present the 911 recording at trial. Moreover, it is apparent from the trial transcripts that Petitioner's trial attorney cross-examined both the victim and her mother, at length, in an attempt to impeach their testimonies. ECF No. 14-6 at 34-57, 64-67, 90-111. Therefore, Petitioner's attorney was not ineffective, and this claim fails.

### D. Fair Trial

Petitioner next claims that his Fifth and Fourteenth Amendment rights to a fair trial were violated by the state of Michigan when: (1) a nurse vouched for the credibility of the victim at trial; (2) the judge coerced the jury's verdict; (3) the prosecutor improperly implied that

Petitioner's attorney did not believe in his case; and (4) the prosecutor improperly told the jury about facts not in evidence.  ECF No. 1 at 7-8.

### i. Nurse Vouching

Petitioner claims that he was denied a fair trial when, "a nurse vouch[ed] for the credibility of the [victim] when she stated that the [victim's] allegations were consistent with a performed medical examination." ECF No. 1 at 7-8. To begin, Petitioner's objection is a matter of state law that cannot be reviewed by federal courts absent a showing that the admission of the nurse's testimony as it relates to the victim's credibility constituted a denial of fundamental fairness.  *Estelle*, 502 U.S. at 67-68 (noting that on habeas review, federal courts are limited to deciding if a conviction violated laws, treaties, or the Constitution and are not to reexamine state-court determinations of state-law issues).  A federal court may only review state law issues if the state law evidentiary ruling is so egregious as to deny the petitioner a fundamentally fair trial. *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007).  "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege*, 485 F.3d at 374 (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)).  Because Petitioner has not shown that the nurse's testimony was a highly critical part of his trial, his claim is not reviewable by this habeas court.

However, even if this Court could review Petitioner's claim, it would still fail. "Under Michigan law, an expert [] 'may not vouch for the veracity of the victim.'" *Belcourt v. Berghuis*, No. 08-13808, 2009 WL 2488088, at *3 (E.D. Mich. Aug. 13, 2009) (quoting *People v. Peterson*, 450 Mich. 349, 352 (1995)).  It is "improper for a lay witness or an expert witness to offer an opinion vouching for the credibility of another witness." *Coleman v. McKee*, No. 1:08-

23

CV-391, 2011 WL 3299086, at *13 (W.D. Mich. June 29, 2011) (citing *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006)). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted). However, introducing such testimony does not automatically make the conviction unconstitutional; rather, the question is whether the testimony was "so prejudicial as to be fundamentally unfair, thus denying the defendant a fair trial." *Coleman*, 2011 WL 3299086, at *13 (quoting *Engesser*, 457 F.3d at 736 and citing *Bedford v. Collins*, 567 F.3d 225, 233-34 (6th Cir. 2009)).

The Michigan Court of Appeals was the last court to provide a reasoned decision regarding this claim.  Its decision denying Petitioner's vouching claim does not rise to the level of a constitutional violation that would require this court to reexamine the state law determination:

> Defendant argues that the trial court erred in admitting Willis's testimony vouching for the credibility of the victim. We disagree. Because this issue was not preserved in the trial court, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763-764.
>
> Because Willis testified based on her knowledge, experience, and training, "it would appear that [her] testimony constituted expert opinion testimony and not lay opinion testimony under MRE 701." *People v. Dobek*, 274 Mich. App. 58, 77; 732 NW2d 546 (2007). In cases involving alleged child sexual abuse: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *People v. Peterson*, 450 Mich. 38, 352; 537 NW2d 857 (1995), amended 450 Mich. 1212 (1995). Even an indirect reference by an expert may contravene these prohibitions because the jury may be looking "to hang its hat" on the testimony of an impartial witness to back up the complainant's allegations. *Id.* at 376. An

24

expert's testimony that his findings are consistent with the alleged victim's history is impermissible when based solely on what the alleged victim told him unless the expert has been qualified as an assessor of credibility, *People v. Smith*, 425 Mich. 98, 109; 387 NW2d 814 (1986), as credibility matters are to be determined by the jury, *Dobek*, 274 Mich. App. at 71.

In this case, Willis testified as follows:

Q: You talked to [the victim], or [the victim], correct?

A: Correct.

Q: And you were present during the exam, correct?

A: Yes.

Q: And you'd also been present you said during hundreds of exams of this type of nature of the female genitalia, correct?

A: Correct.

Q: Based on what [the victim] had described had occurred, were the results of her exam inconsistent?

A: No.

Upon review of this testimony in the context with the rest of the record, it is apparent that the prosecutor was attempting to solicit testimony from the witness that a negative physical exam does not necessarily mean that a sexual assault did not occur. The manner in which the prosecutor's question was worded, however, could arguably be viewed as a back door attempt at implying that if Willis did not find the results of the exam inconsistent with the child's description of what occurred, it was therefore consistent. The prosecutor could have asked Willis whether, in general, a sexual assault can occur and generate no physical findings, but the question here was directed specifically in regard to the victim and whether her physical exam was inconsistent with her claims. In any event, Willis testified extensively regarding what the exam (according to the medical records) did and did not reveal in terms of physical findings. She never expressed her opinion or belief regarding whether sexual abuse occurred, but rather, indicated that the exam findings did not rule out the possibility. Even assuming admission of the testimony

25

> was erroneous, it does not require reversal because we do not find
> that it affected the outcome of the lower court proceedings. See
> *Carines*, 460 Mich. at 763-764.

*Correa*, 2010 WL 1979297, at **6-7. The Michigan Court of Appeals' decision is thorough and

complete, and it does not contradict controlling federal law. *Bailey*, 271 F.3d at 655. The

isolated statements made by the nurse witness were not "crucial, critical highly significant

factors" in Petitioner's case. Therefore, the admittance of this testimony did not deny Petitioner

his right to a fair trial. Thus, this claim fails.

### ii. Coerced Jury Verdict

Petitioner next claims that he was denied a fair trial when the trial judge "coerced"

the jury's verdict by shedding light on the "horrendous predictament [sic] the jury would

confront if a verdict was not immediately reached that same day." ECF No. 1 at 8.

Federal law states that "[a]ny criminal defendant . . . being tried by a jury is

entitled to the uncoerced verdict of that body." *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988).

A habeas court must apply the "totality of the circumstances" test when considering whether a

trial court's actions or instructions coerced a jury's verdict. *Hamilton v. Burt*, No. 2:08-CV-

13960, 2012 WL 6590745, at *7 (E.D. Mich. Nov. 21, 2012) (citing *Early v. Packer*, 537 U.S. 3,

8 (2002)). "Under AEDPA, the question is not whether this Court would find the trial court's

actions coercive; rather, the question is whether the state courts were reasonable in finding no

coercion." *Id.* (citing *Early*, 537 U.S. at 11).

The last court to issue a reasoned decision on this issue was the Michigan Court of

Appeals:

> Defendant argues that the trial court denied defendant a fair trial
> because it coerced the verdict through comments that created an

26

atmosphere conducive to hasty deliberations. "Claims of coerced verdicts are reviewed case by case, and all the facts and circumstances, including the particular language used by the trial court, must be considered." *People v. Vettese*, 195 Mich. App. 235, 244; 489 NW2d 514 (1992).

In the instant case, after delivering instructions on the law to the jury and before dismissing the jurors to the jury room for deliberations, the trial court stated as follows:

> All right. Let me tell you what our schedule is at this time and I'm telling you this not because I'm trying to suggest in any shape, manner or form how long you should deliberate for, just want you to know what our schedule is. It's about 3:30 at this point. We'll go today until 4:30. If you have reached a verdict by 4:30 today, we'll call you back in here and receive your verdict at that time and that will conclude your service on this jury. If you are not able to reach a unanimous verdict by 4:30 today, we will send you home at that time and you will have to come back then tomorrow morning at 8:30. I do want to just alert you to the fact that Wednesday morning is motion day here in Oakland Circuit Court and that means every courtroom is going to be filled with lawyers and the parking lot's going to be a lot fuller than it has been yesterday and today. I'm just alerting you to that fact so you can build in a little more time in your driving, you may be parking just a little bit further away in the parking lot than you did yesterday and today and I also don't want you to be surprised if you see the hallways and our courtroom with a lot more lawyers than you have seen on these two days.

Aside from the fact that defendant expressly stated he had no objections to the jury instructions immediately following the above comments by the judge, we find that the trial court's comments were not an attempt to force a verdict; instead, they merely informed the jurors regarding necessary logistical information.

*Correa*, 2010 WL 1979297, at **14-15. Here, the Michigan Court of Appeals's decision does not violate clearly established federal law, and the court came to a reasonable conclusion on the issue of jury coercion in light of the facts and evidence presented. *Brown*, 531 F.3d at 436; *see e.g., United States v. Ratliff*, 63 Fed. App'x 192, 195 (6th Cir. 2003) ("[A trial] court's statement

regarding the ability of the jury to deliberate on certain days is not necessarily coercive."). The transcripts do not show that the trial judge suggested that the jury must reach a verdict on a certain day or within a specified amount of time. *See Hamilton*, 2012 WL 6590745, at *8. Therefore, for this Court denies Petitioner's jury coercion claim.

### iii. Prosecutor's Implication

Petitioner next argues that he was denied a fair trial when the, "prosecutor[] attacke[ed] . . . the veracity of [Petitioner's] attorney by implying that he did not believe in his client. The prosecutor stated that [Petitioner's] attorney had to create reasonable doubt w[h]ere none existed." ECF No. 1 at 8; *see also* ECF No. 14-13 at 46-47.

"It is improper to personally attack defense counsel." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). The prosecutor may not "'interject[] personal beliefs into the presentation of his case' or 'make unfounded and inflammatory attacks on the opposing advocate.'" *Clarke v. Warren*, 556 Fed. App'x 396, 408 (6th Cir. 2014) (quoting *Young*, 470 U.S. at 8-9). Nor may the prosecutor belittle the defendant, his counsel, or any of the defendant's witnesses. *Clarke*, 556 Fed. App'x at 408 (citing *Bedford*, 567 F.3d at 233). However, "[h]ow far the government may go . . . depends on what the defense has said or done (or likely will say or do)." *Id.* (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)).

The Michigan Court of Appeals considered this issue on Petitioner's direct appeal:

> Defendant argues that the prosecutor engaged in misconduct and attacked the veracity of defense counsel by suggesting that he was intentionally attempting to mislead the jury, implying that he did not believe his own client. Because this issue was not preserved in the trial court, our review is for plain error affecting defendant's substantial rights. *Id.*

28

A prosecutor may not personally attack defense counsel. *People v. McLaughlin*, 258 Mich. App. 635, 646; 672 NW2d 860 (2003). "[A] prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v. Unger*, 278 Mich. App. 210, 236; 749 NW2d 272 (2008) (internal quotations and citation omitted). A prosecutor's remarks, however, must be considered in context with defense counsel's comments. *Watson*, 245 Mich. App. 572 at 592-593. An otherwise improper remark may not constitute an error requiring reversal if it responds to defense counsel's argument. *Id.* at 593.

In this case, defendant challenges two remarks by the prosecutor. In the first instance, the prosecutor stated:

> Now I think what [defense counsel] is going to probably hinge on, couple of things. First of all I guess when there isn't any reasonable doubt, you may have to try to create a reasonable doubt.

In the second instance, the prosecutor argued:

> I'll try not to belabor this, just touch upon some of the things [defense counsel] said, but again deflecting, trying to deflect your attention off of what's important here, let's create reasonable doubt.

Defendant, however, has taken both of these statements by the prosecutor out of context.

After making the first statement, the prosecutor went on to clarify. She was attempting to preemptively rebut an argument by defense counsel that there was no CSC on the basis of a check mark made by the doctor that there was no digital penetration of the victim's vulva. The prosecutor further stated:

> The one thing that I guarantee [defense counsel] is going to probably try to hinge on is when you look at this little check list here, act described by patient. Dr. Frankowiak stated fondling, yes. Digital under-vulva penetration? No. Well, unfortunately Dr. Frankowiak was not the one in the room with [the victim] when defendant penetrated her genital opening, [the victim] was. So don't allow, I'm asking you don't allow defendant to make you think that a little tiny

29

checklist is going to determine whether or not this actually happened and whether or not penetration existed.

The prosecutor did not argue that defense counsel was trying to intentionally mislead the jury. Instead, the prosecutor was attempting to rebut a legitimate argument by the defense counsel that there was a reasonable doubt regarding whether penetration occurred as a result of the medical records and the check mark by Dr. Frankowiak indicating that it did not occur.

The prosecutor's second statement, made during her rebuttal argument, was responding to defense counsel's arguments during closing that there was reasonable doubt regarding defendant's guilt. Defense counsel argued that there was no physical evidence tying defendant to a crime despite the doctor taking a rape kit. He questioned the veracity of the victim's testimony because the victim did not yell out when defendant was assaulting her and she did not immediately run to her mother. Finally, defense counsel pointed to the checklist where the doctor noted there was no vulva penetration, creating reasonable doubt as to defendant's guilt. In response, the prosecutor made her second statement at issue-that defense counsel was trying to deflect the jury's attention away from what was important. The prosecutor went on to refute each of defense counsel's arguments. She argued that the victim had no reason to misrepresent what happened to her. She responded to defense counsel's argument about the rape kit by going over testimony that sometimes rape kits are not submitted because the costs are high and the likelihood of obtaining evidence is low. The prosecutor's statement that the defense counsel was "creating reasonable doubt" was made in response to defense counsel's closing argument. It was not an improper comment on whether defense counsel was intentionally misleading the jury or whether defense counsel believed defendant. There was no error.

In any event, any harm resulting from the prosecutor's statement was remedied by instructions from the trial court. See *Watson*, 245 Mich. App. 572 at 586. In the jury instructions, the trial court stated, "[t]he lawyers' statements and arguments are also not evidence. They're only meant to help you understand the evidence and each side's legal theories."

*Correa*, 2010 WL 1979297, at **7-9. The Michigan Court of Appeals' decision is thorough and complete, and its decision does not violate clearly established federal law. *Bailey*, 271 F.3d at

655. Since Petitioner has not shown that the prosecutor's statements attacked or belittled his

attorney, this claim fails. *Clarke*, 556 Fed. App'x at 408 (quoting *Young*, 470 U.S. at 8-9).

### iv. Prosecutor's Personal Opinion

Petitioner's final argument under this fair trial claim is that the prosecutor

improperly expressed her personal opinions regarding "an argument about facts not in evidence,

an argument to the jury to place themselves in the accusant's shoes, and an argument placing the

weight of her office behind the accusant." ECF No. 1 at 8.

"[A] prosecutor [may not] improperly vouch for the victim's credibility or express

any opinion regarding such. Instead, the prosecutor [may] merely comment[] on the evidence in

question which he is entitled to do." *Coleman*, 2011 WL 3299086, at *16 (citing *United States v.

Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996) (noting it is improper for any attorney to

express personal opinions or beliefs about the truth or falsity of any testimony, but the attorney

"must be given leeway to argue reasonable inferences from the evidence.") and *United States v.

Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995) (noting it is permissible for a prosecutor to review

the evidence of record and comment on the strength of the prosecutor's case)).  Improper

vouching for the credibility of a witness occurs only when a jury "could reasonably believe that

the prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*,

985 F.2d 844, 846 (6th Cir. 1993).

Petitioner first raised this issue in his direct appeal to the Michigan Court of

Appeals.  ECF No. 14-13 at 109-112.  The appellate court denied his claim:

> Defendant argues that he was denied a fair trial due to prosecutorial
> misconduct because, during closing argument, the prosecutor
> improperly vouched for the credibility of the victim, argued facts not

31

in evidence, relied on the prestige of the prosecutor's office, and appealed to the sympathy of the jury. We disagree.

Because this issue was unpreserved, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763-764. As indicated, prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Thomas*, 260 Mich. App. at 454. "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Brown*, 279 Mich. App. at 135.

A prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully. *People v. Seals*, 285 Mich. App. 1, 21; 776 NW2d 314 (2009). A prosecutor may, however, argue from the facts in evidence that the defendant or another witness is worthy or not worthy of belief. *Dobek*, 274 Mich. App. at 67. A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. *Unger*, 278 Mich. App. at 241. He or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case. *Bahoda*, 448 Mich. at 282.

The prosecutor did not vouch for the credibility of the victim. Instead, she pointed out that the victim had no motive to lie, by stating, "[d]o you really think that a kid's going to come in and lie about, in front of you about what happened in August of 2007?" Such an inference was proper based on the facts. Moreover, the prosecutor did not rely on facts not in evidence. Stating that it would be difficult for a nine-year old to articulate that she was sexually assaulted does not require the testimony of an expert witness but is based instead on common sense. Finally, the prosecutor was not relying on the prestige of the prosecutor's office when she stated, "We're claiming he used his finger and put it in the labia majora[,]" but was instead setting forth the prosecutor's view of the case. The prosecutor's statements were not improper.

In addition, a prosecutor may not appeal to the jury to sympathize with the victim. *Watson*, 245 Mich. App. at 591. According to defendant, the prosecutor invited the jury to decide the case on the basis of the victim's age, not the evidence. Defendant does not point to any particular statements by the prosecutor during the closing. The prosecutor asked the jury to evaluate the credibility of the victim keeping in mind her age, but did not ask the jury to decide the case

32

solely on the basis of age. As a result, the prosecutor did not improperly appeal to the sympathy of the jury.

Any harm caused by the prosecutor's statements was remedied by jury instructions. See *id.* at 586. The trial court instructed the jurors that they were to decide the credibility of witnesses. Moreover, jurors should decide what they believe based on their own common sense and experiences. In addition, the trial court instructed the jury not to be influenced by sympathy or prejudice. Therefore, the instructions cured any potential harm.

*Correa*, 2010 WL 1979297, at *11-12. The state court's decision is thorough and complete, and it does not violate clearly established federal law. *Bailey*, 271 F.3d at 655. The prosecutor did not improperly vouch for the credibility of the victim. *Reliford*, 58 F.3d at 250-51 (reviewing the evidence of record and commenting on the strength of the prosecutor's case is permissible).

Moreover, to the extent that Petitioner claims that the prosecutor impermissibly appealed to the jury to sympathize with the victim, this claim also fails because this error is cured by the court's jury instructions. *See Bentley v. Howes*, No. 2:09-CV-10106, 2013 WL 2196832, at *7 (E.D. Mich. May 20, 2013) (noting that the petitioner's claim that the prosecutor "appealed to the jury to sympathize with [the victim]" was "defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision."); *see also Cockream v. Jones*, 382 Fed. App'x 479, 486 (6th Cir. 2010) (noting that improper statements urging the jury to sympathize with the victim were not flagrant, especially considering the strength of the evidence against the defendant); *United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993) (condemning "comments [that] had the ability to mislead the jury as well as ignite strong sympathetic passions for the victims and against [the defendant].").  Therefore, Petitioner was not deprived of his right to a fair trial, and as such, this claim is denied.

33

### E. *Brady* Violation

Petitioner argues that his Fifth and Fourteenth Amendment rights to a fair trial were violated when the prosecutor failed "to provide [Petitioner] with an exculpatory 911 recording." ECF No. 1 at 8. Petitioner believes that "the 911 recording would have discredited the testimony of a material witness, Tenille Lafay Clark (the caller)." *Id.*

To the extent that Petitioner claims that the prosecutor's failure to disclose this recording violated Michigan law, this claim is not cognizable on habeas review because federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 16; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.

Moreover, to the extent Petitioner claims that the state committed a *Brady* violation by not turning over the 911 recordings, this claim also fails. *See Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* court determined that "a defendant's due process rights are violated where the government withholds evidence favorable to a defendant that is 'material either to guilt or to punishment.'" *Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010) (citing *Brady*, 373 U.S. at 87); *Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]he duty to disclose such evidence is applicable even though there has been no request by the accused . . . and that the duty encompasses impeachment evidence."). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 281 (*United States v. Bagley*, 473 U.S. 667, 682 (1985)). There are three elements to a *Brady* violation:

> (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

34

(2) [T]hat evidence must have been suppressed by the State, either willfully or inadvertently;

(3) [A]nd prejudice must have ensued.

*Strickler*, 527 U.S. at 281-82.

Only after all three prongs are established may a court conclude that the defendant's due process rights have been violated. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (noting due process is violated when evidence clearly supporting a defendant's innocence is withheld since that evidence should have put the prosecutor on notice of a duty to produce). This is because, beyond *Brady*, there is no general constitutional right to discovery, and the *Brady* court did not create one. *See Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.").

Here, regardless of whether Petitioner has established the first two prongs of *Brady*, Petitioner's *Brady* claim fails because he has not demonstrated that he suffered any prejudice as a result of this alleged violation. Petitioner has not provided any explanation of the importance or materiality of this 911 recording in his case, aside from his belief that it could have been used to impeach one of the prosecutor's witnesses. This conclusory allegation does not establish that there was a reasonable probability that "the result of the trial would have been different if the suppressed documents [or here, video recording] had been disclosed to the defense." *Strickler*, 527 U.S. at 289. Therefore, Petitioner has not demonstrated any prejudice to his case by not having or using the 911 recording during trial—meaning no *Brady* violation has occurred in this case. Consequently, this claim is denied.

35

### F. Minimum Sentence

For Petitioner's final argument, he claims that the "twenty-five [year] minimum sentence for first-degree criminal sexual conduct amounts to cruel and unusual punishment." ECF No. 1 at 8. To the extent Petitioner claims that this mandatory minimum violates Michigan law, this claim is not cognizable on habeas review for the reasons outlined in *Abdullah Land v. Rapelje*, No. 14-CV-11683, 2014 WL 2779579 (E.D. Mich. June 19, 2014):

> This Court initially notes that Petitioner's sentence was within the statutory limits under Michigan law for the offense of first-degree criminal sexual conduct. *See*[] Mich. Comp. Laws § 750.520b(2)(b). State courts are the final arbiters of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corps."). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

*Land*, 2014 WL 2779579, at *3. Since Petitioner has not shown that his sentence exceeded the statutory limits or was unauthorized by law, this claim is not cognizable on habeas review. *Id.*

Even if it were, this claim still fails. The court in *Land* stated the following in regard to a petitioner's claim that the mandatory minimum sentence of twenty-five years for CSC is cruel and unusual:

> Petitioner fails to state a claim for federal habeas relief. The United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality of the United States Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict

36

proportionality between the crime and the sentence. The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001. And a sentence within the statutory minimum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). Moreover, federal courts generally do not engage in a proportionality analysis, except where the sentence imposed is death or life imprisonment without parole. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Therefore, successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Petitioner's minimum sentence of twenty five years for first-degree criminal sexual conduct was not disproportionate to the offense or to the offender. *See, e.g., Stadler v. Curtin*, 682 F. Supp. 2d 807, 829-830 (E.D. Mich. 2010) ("The Michigan courts' determination that a sentence of twenty-five to forty years for first degree criminal sexual conduct was not disproportionate is not an unreasonable application of this Supreme Court precedent."). The fact that Michigan's criminal sexual conduct statutes calls for a mandatory minimum sentence of 25 years and no longer gives any discretion to the sentencing judge does not alter the Court's analysis of Petitioner's claim. Indeed, "*Harmelin* squarely establishes that the mandatory nature of a non-capital penalty is irrelevant for proportionality purposes." *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010). As *Harmelin* upheld a mandatory nonparolable life sentence for the offense of possession of over 650 grams of cocaine, it "precludes the conclusion that [Petitioner's] much shorter mandatory minimum sentence" was "cruel and unusual." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013).

*Land*, 2014 WL 2779579, at *4. Here, much like the defendant in *Land*, Petitioner's sentence fell within the statutory limits of Michigan law for first-degree criminal sexual conduct, and he was not convicted of life imprisonment without parole or death. *Id.* Therefore, Petitioner has not shown that he falls within one of the "exceedingly rare" exceptions that would allow this Court to undergo a proportionality analysis of his sentence. *Id.* (citing *Rummel*, 445 U.S. at 272). As such, Petitioner's claim is denied. *Bailey*, 271 F.3d at 655.

III.

This Court concludes that all of Petitioner's claims are without merit.  Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, this Court denies a certificate of appealability as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's motion for post-conviction relief (ECF No. 1; ECF No. 9) pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  A judgment consistent with this Opinion and Order will be entered. In addition, Petitioner's motion to stay (ECF No. 19) is denied as moot.

38

**SO ORDERED**.

                                      __/s/ *R. Allan Edgar*_____

Dated: 1/19/2016                   R. ALLAN EDGAR
                                      UNITED STATES DISTRICT JUDGE